LAW OFFICES OF
# MITCHELL SCHLEY, LLC
197 ROUTE 18 SOUTH
SOUTH TOWER, SUITE 3000
EAST BRUNSWICK, NEW JERSEY 08816

(732) 325-0318

FAX (732) 325-0317

mschley@schleylaw.com
www.schleylaw.com

MITCHELL SCHLEY
MEMBER OF
NJ, NY & PA BARS

NEW YORK OFFICE:
245 PARK AVENUE, 39TH FLOOR
NEW YORK, NEW YORK 10167

(212) 672-1848
FAX (212) 372-8798

August 13, 2019

**VIA ECF**

Hon. J. Paul Oetken, U.S.D.J.
U.S. District Court for the Southern District of New York
40 Foley Square, Courtroom 2101
New York, NY 10007

    Re:    *Felix Luna v. Ralph Lauren Corp.*, et al., 19-cv-2084 (JPO) (S.D.N.Y.)

Dear Judge Oetken:

    This joint letter motion is submitted by Plaintiff and Defendants, requesting that the Court approve the Settlement Agreement in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Settlement Agreement and a proposed order is appended hereto as Exhibits 1 and 2.

## I.    The Settlement Agreement

    Plaintiff is a former tailor for Defendant Harry OM, LLC. He alleges that he was paid "straight-time" for all hours worked, and did not receive overtime premiums. His Complaint primarily asserts claims for unpaid overtime under the FLSA and NYLL. His Complaint also asserts wage notice and pay statements claims under NYLL §§ 195(1), 195(3).

    The parties, through their respective counsel, have engaged in good faith, arm's-length negotiations. Among other things, Defendants produced pay records reflecting hours worked for a roughly four month time period, and the parties then used those records to calculate estimated damages for the entire statutory period (the parties concluded that it would have been cost prohibitive and infeasible to obtain exact records to reconstruct the entire period). Further, time cards prior to the representative period have not been located and may no longer be in defendants' possession.

    After negotiations over a period of several weeks, the Parties arrived at a resolution, which includes payment of a total of $70,000.00, inclusive of attorneys' fees and costs. The settlement agreement reflects a reasonable compromise of the *bona fide* disputed issues in this case, in

particular Plaintiff's claims for unpaid overtime, liquidated damages, statutory damages, and attorneys' fees. The agreement resolves only the claims of the named Plaintiff, and does not affect the rights of any other individuals.

The parties believe that the terms and conditions of the settlement are fair, reasonable, and in their mutual best interests in light of the documents and information produced by Defendants. In addition, Plaintiff believes that the certainty of settlement is better than the uncertain outcome of extended litigation, and Plaintiff prefers to receive a payment now without the delay and uncertainty that litigating the matter would entail.

## II.     The Court Should Find the Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, 2014 WL 185628, at *7 (S.D.N.Y. 2014) (noting that inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In evaluating the proposed settlement, this Court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335.

### A.     *Plaintiffs' Range of Possible Recovery*

The proposed settlement is substantial and is within the range of reasonableness of recovery when compared to the various possibilities of recovery in light of the documents and information produced by Defendants. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particular sum." *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal citations and quotations omitted).

Pursuant to the settlement agreement, Plaintiff and his attorneys will receive a combined total of $70,000.00. This is a substantial percentage of any potential recovery. Indeed, based on the parties' counsels' damages assessment, $70,000 *represents in the area of 100% of* Plaintiff's

total potential recovery for alleged unpaid overtime, alleged liquidated damages, and alleged statutory damages. As is typical, one third of that amount will be allocated to attorney's fees.

    B.    *The Extent To Which The Settlement Will Enable The Parties To Avoid Anticipated Burdens And Expenses In Establishing Their Respective Claims And Defenses And The Seriousness Of The Litigation Risks Faced By The Parties*

A settlement avoids a trial on the merits that would have an uncertain potential outcome. *See Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012). In reviewing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *8 (S.D.N.Y. 2012).

In light of these factors, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter, which pertain almost exclusively to Plaintiff's overtime claims. While Plaintiff's counsel anticipates favorable outcomes at trial and appeal, the nature of trial and appellate practice is inherently uncertain and lengthy. The settlement eliminates these risks. In addition, the settlement eliminates the need for depositions and trial which might interfere with Plaintiff's current work schedule. Furthermore, discovery may show that the purported underpayment, if any, of wages alleged in the Complaint was a lesser amount than the parties' estimated. Additionally, Defendant contends that the Ralph Lauren Corporation is an improperly named defendant, and it is undisputed that the remaining Defendants are small businesses together with their owners. There is a risk that the cost of defending against protracted litigation would leave these Defendants unable to pay a judgment, should Plaintiff prevail on the merits. Accordingly, there is little for Plaintiff to gain by continuing to litigate this case through trial as Defendants are providing him with a reasonable settlement given his potential recovery.

Without admitting any liability or wrongdoing, Defendants are making a business decision to enter this settlement and forego litigation over disputed issues of law and fact in order to bring an early and cost-effective resolution to this matter and avoid continued litigation costs, the uncertain nature of extended litigation, and potentially greater exposure for attorneys' fees under the FLSA's and NYLL's fee-shifting provisions.

On the other hand, Plaintiff is willing to resolve his claims because he will receive immediate payment, and will avoid the uncertainty discovery, motion practice, and trial. In Plaintiff's counsel's assessment, the settlement represents a very significant percentage of the recovery that the Plaintiff would have achieved had he prevailed on all of his claims. Weighing the benefits of an almost immediate, guaranteed payment to the Plaintiff against the risks and burdens associated with proceeding with a lengthy litigation, the settlement is reasonable and these factors weigh in favor of approval.

C.  *Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The parties engaged in an informal exchange of documents and information participated in settlement discussions in order to arrive at the attached settlement. At all times, the parties' negotiations were on an arm's-length basis by attorneys well-versed in wage and hour litigation. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

D.  *Possibility of Fraud or Collusion*

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients throughout the negotiations on the benefits and risks of continued litigation. Moreover, because Plaintiff left the Defendant's employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

E.  *The General Release Should Be Approved*

The Settlement Agreement includes a mutual general release. The Court should approve this mutual general release, because it serves the purpose of "complete closure" between the parties, particularly given that the plaintiff is a former employee. *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. 2015); *e.g.*, *Rosario v. Structural Pres. Sys., LLC*, 2019 WL 1383642, at *3 (S.D.N.Y. 2019); *Khan v. Young Adult Inst., Inc.*, 2018 WL 6250658, at *2 (S.D.N.Y. 2018); *Coleman v. DeFranco Pharmacy, Inc.*, 2018 WL 3650017, at *2 (S.D.N.Y. 2018). Specifically, the mutual general release ensures that "both the employee and the employer are walking away from their relationship up to that point in time without the potential for any further disputes." *Souza*, 2015 WL 7271747 at *5.

Although general releases are disfavored in certain FLSA contexts, such as collective action settlements, this "settlement only binds the parties," and Luna "should know the other claims []he potentially has against h[is] employer" and should "be able to properly value those additional claims," for the purpose of agreeing to release them. *Id.* at *6. Here, in fact, Luna

represents that he "can think of no other claims." *Id.* Thus, the general release is one that "amounts to zero cost to" him, while providing Defendants with valuable peace of mind. *Id.*

Moreover, to ensure that the general release brings complete closure with complete mutuality, an additional "Bhambi's" entity that was not named in the Complaint has agreed to sign the Settlement Agreement as a party, and agreed to participate in the mutual general release.

Aside from the mutual general release, the Settlement Agreement also contains a narrow release which covers related entities and individuals (*e.g.*, parents, subsidiaries, officers, employees), but is limited to wage-and-hour claims. The purpose of this provision is to facilitate complete resolution of the claims that were or should have been asserted in this litigation, by preventing Plaintiff from subsequently asserting such claims against persons or entities not named as Defendants in this litigation. *See Guzman v. Kahala Holdings, LLC*, 2018 WL 3023156, at *3 (S.D.N.Y. 2018) (approving settlement which released wage-and-hour claims against a group of "related and unrelated entities and individuals"); *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *3 (S.D.N.Y. 2018) (approving release of wage-and-hour claims against a broad group of "Releasees").

### III. Plaintiff's Counsel is Entitled to a Reasonable Fee of $23,333.00

Under the Proposed Settlement Agreement, Plaintiff's attorneys' fees are 23,333.00– approximately 1.45% of Plaintiff's Counsel's actual lodestar. Plaintiff's counsel submits that the requested fees are reasonable. A court may calculate a reasonable attorneys' fee either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

Pursuant to the written retainer agreement between The Law Offices of Mitchell Schley, LLC (the "Firm") and the Plaintiff, Plaintiff agreed that the Firm would represent him on a contingency basis in an attempt to recover unpaid wages and that the Firm would retain 33.3% of any gross recovery. Here, the Firm is requesting this Court award a total of **$23,333.00** in attorneys' fees to fully satisfy any claim that the Firm may have for attorneys' fees associated with representation of the Plaintiff. The Firm is waiving reimbursement of costs and expenses.

The actual lodestar amount in this matter is calculated at $16,120.00. The time records containing the lodestar amount for this matter are attached hereto as Exhibit 3 The lodestar amount was calculated using a discounted hourly rate of $400.00 per hour for attorney Mitchell Schley. For non-contingency matters, the firm typically bills Mr. Schley's time at a rate of $550.00 an hour.

Plaintiff's counsel has used its considerable expertise and experience in litigating this case and provided a satisfactory result to plaintiff. The contingency fee in this case is approximately 1.45% the lodestar, however this amount is fair and reasonable as it was the fee agreed upon by plaintiff in his retainer agreement which is standard in this type of case. Further, courts in the Second Circuit routinely approve this fee arrangement. See, e.g., *Plizga v. Little Pol. Rest. Inc.*, No. 15 Civ. 8820 (LAK) (BCM), 2016 U.S. Dist. LEXIS 94859, at *16-17 (S.D.N.Y. July 18, 2016) ("[A]ttorneys' fee awards of one third or less of the total settlement amount are, in most cases, considered reasonable in this District."); *Janko v. Patsy's Italian Rest., Inc.*, No. 15 Civ. 4995 (RLE), at *2 (S.D.N.Y. June 10, 2016) ("The Court further finds that attorneys' fees in the amount of . . . thirty-three percent of the settlement award, are reasonable. Although the amount is greater than counsels' lodestar . . . , retainer agreements containing contingency fees of one-third are standard in FLSA cases and routinely approved by courts in this Circuit."); *Hyun v. Ippudo USA Holdings*, 14 Civ. 8706, at *3 (S.D.N.Y. Feb. 24, 2016) (awarding one-third contingency fee and noting that it is "common in this District"); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG) (VMS), 2014 U.S. Dist. LEXIS 164069, at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). See also, Reves v. Omnity Consulting LLC, 2017 U.S. Dist. LEXIS 104610* (S.D.N.Y. 2017) (Oetken, J) (approving thirty-three percent of settlement).

In addition, in this circuit and elsewhere, counts regularly award lodestar multipliers of up to eight times or higher. See Hernandez v. Merrill Lynch & Co., 2013 U.S. Dist. LEXIS 43681* at *26 (collecting cases). Here the lodestar multiplier is less than two times.

Plaintiff has been represented by The Law Offices of Mitchell Schley, LLC. Mr. Schley is a highly experienced labor lawyer including in the area of FLSA class actions. Examples of such reported cases **are set forth below [1].** A copy of his bio is attached as Exhibit 4.

---

[1] Vargas v. HSBC Bank USA, N.A. United States District Court for the Southern District of New York Aug 09, 2012 2012 U.S. Dist. LEXIS 113993; In re Chickie's & Pete's Wage & Hour Litig. United States District Court for the Eastern District of Pennsylvania Mar 07, 2014 2014 U.S. Dist. LEXIS 30366; Thompson v. Real Estate Mortg. Network United States Court of Appeals for the Third Circuit Apr 03, 2014 748 F.3d 142; Meyer v. United States Tennis Ass'n United States Court of Appeals for the Second Circuit Jun 29, 2015 607 Fed. Appx. 121; Bustamante v. D.O. Prods., LLC United States District Court for the District of New Jersey Aug 30, 2017 2017 U.S. Dist. LEXIS 140744; Burnett v. Wahlburgers Franchising LLC United States District Court for the Eastern District of New York Jul 10, 2018 2018 U.S. Dist. LEXIS 114548; Porter v. Merrill Lynch Pierce Fenner & Smith, Inc. United States District Court for the District of New Jersey Nov 09, 2018 2018 U.S. Dist. LEXIS 192061.

## IV. Conclusion

For the reasons set forth above, the parties respectfully request that the Court approve the settlement as reflected in the Agreement. Plaintiff's counsel further requests that the Court approve the attorneys' fee award as fair and reasonable. As noted, a proposed order is attached as Exhibit 2.

Should you have any questions, please do not hesitate to contact us.

Respectfully submitted,

**Law Offices of Mitchell Schley, LLC**

/s/ *Mitchell Schley*

Mitchell Schley

cc:   All counsel of record (Via ECF)